Good morning. May it please the court, I'm Brad Anderson and I represent the appellant and the plaintiff June Greiner. I hope to reserve about two minutes if I can and I'll be watching the shot clock here as I know it ticks down. Labeling her as an octogenarian who must have been in shock or confused by the nine IRS agents in SWAT gear who broke down her front door or the judge believing based solely on written declarations that she otherwise lacked the mental state to properly perceive that the men at her front door were actually officers instead of burglars, the district court disregarded Mrs. Greiner's version of events. Violating most of the well-established principles of the Rules of Summary Judgment, the trial court chose to draw every inference against Mrs. Greiner and determined that her version of events was not believable or that she was incapable because of her age or because of the shock of the moment of having nine IRS agents break through her door that she could not perceive what was occurring right before her even though she was present and could witness or at least provide a version of what occurred. But if I read what she said it seems to me she says she was working in front of a computer right? Yes. She had the television and it was on in the family room? Yes. And then she says I can normally hear but I didn't hear this. What she said your honor was the only thing she heard was a big bang at her front door. Okay so then she didn't say it didn't happen she just said I didn't hear anything more than a bang. A big bang that she thought was a rock hitting her front door. So if she doesn't say it didn't happen then how is it that the judge shouldn't take the facts as alleged by your opposition as true? Every witness is presumed to tell the truth. I understand that but I'm saying that's why I ask you the questions I did. Seems to me I'm trying to look at her affidavits, look as best I can. It says she was working at her laptop, she was in a breakfast area, the television was on normal volume, she heard a loud bang. She didn't say there wasn't they didn't do what they say they said she just she doesn't know she didn't hear it. Your honor we agree that there was something the officers did at the front door that was something happening at her front door. You agree that there was a loud bang that's the best you can because that's the best she heard right? Yes. And then she says she didn't hear anyone knock before or after the loud bang. She heard no one say they had a warrant or that they had wanted me to answer the door. Correct. But she does agree did she not that she went to the door and looked out the window. The side window yes. Right and then she went back to her kitchen. Yes. So when she looked out the window she saw all these people out there and because she had been had a boy who had knocked on her house before and told her a sprinkler wasn't working and thought that was a burglar she thought this was a burglar and she was gonna call somebody. She had a she had a perception that what was happening to her was different than what actually was happening. Well I guess again I then say give her all intendments the fact the best I can tell is what she did hear was a loud bang but I cannot say that this other stuff did not happen. All I can say is she didn't hear it. She says she would have been able to hear it it's her house. How long has she lived in the house? Over 20 years they built the house. What did her expert say about if there had been a knock and announced she should have been able to hear it? What did the expert say? We did all these even videotaped and he said we from her dining room table which is just around the corner from the front door with the TV playing the volume she said it was she could clearly hear it she could also clearly hear voices at the front door. So from her position sitting and then we also reenacted it when she got close to the door you can hear voices coming through the door without even shouting. So it seems to me the problem because I shared Judge Smith's concern it's a little bit of a mind teaser it's it's the it's almost proving the negative but your your view is a summary judgment shouldn't should not have been granted. Absolutely. The difficult part for me I'm gonna ask both lawyers the same question I seem I think the judge's decision pivots on the knock and announce but why couldn't a reasonable I'll ask you both I'm not clear why a reasonable juror couldn't couldn't believe the expert and this woman. Well I forgive me I forgive me your client's name I don't mean to. June Greiner. Yeah she's 85 now. That that's the issue. Yeah so the judge. So if I turned my back this is my hypothetical for both of you if I turn my back on both of you right now and then tomorrow I said signed a declaration saying that I both my back turned so you couldn't see me would you be competent to testify about whether or not I hollered at you? I'm present right I'm present I'm just as present as you are. Is that a yes? Yes yes the answer is yes. Because you didn't perceive it with your ears that's your position it's not it's not a matter of sight it's a matter of you didn't perceive it. Yes and to squarely answer your question is if it's your obligation to make sure before you have a dynamic entry into my house that a reasonable person on the inside of that house can hear you then my testimony about what I heard is relevant in every inference when I say look at. Relevant it's relevant it just seems it forgive me for interrupting but the there's also I think nine declarations from officers saying that they knocked in and out so the jurors might decide that they believe the officers as well. Yeah I mean I could lose the case but it's up to it's up to me to prove my case and it's up to the jury to decide which version you don't just count. Your time is ticking let's see if there's other questions. I guess go ahead did you have a question? If the record is that she's sitting in there and she heard something at the front door. Yes. Then she went to the door. Yes. She saw talking she tries to say in an affidavit that changes her deposition that it was mumbling but she actually heard words according to her deposition which she has is stuck with under the wall. Then she returned to the kitchen. Then the door was broken in. That seems to me to be fully consistent with everything that is in the agent's affidavit and that no reasonable juror could conclude on the basis of her testimony alone expert or other excluding the expert including the experts that the knock and announce didn't happen and that's the issue is what it happened so can you address that problem for me? Yeah and I'm gonna try to do it in about 40 seconds but I can understand this is very important to you so the the testimony of the nine officers and June Greider are are different in this regard. Again we don't dispute there was something that happened at the front door that drew her there. The question is whether the officers reasonably announced their their presence that is who they were and why they were there and what they were demanding of her. Or whether the first thing she heard was the battering ram. Right I don't I don't know. She admits that the battering ram occurred after she came back into the kitchen right? No no we she can't say what happened on that side what she no I'm saying the door broke down after as I understand the record the door was make the telephone call am I wrong about that? Her version is what Daniel's version is I knocked and announced one time. Her verse and then and then he says I waited 40 seconds the other officer said it happened right away Daniel says I waited 40 seconds because I knew as an elderly woman and I that's not the question I'm asking okay I'm asking you this I think I understand that I know I understand the record to be this and if I'm wrong I'd like to know why. That the battering ram applied came to through the door after she had gone to the door heard the mumbling came back around and went to the telephone went to the kitchen for the telephone right? Yes. Yes or no? Yes. Okay so then that's consistent with the officer isn't it? No because like I said the officer said she came to the front door I had eye-to-eye contact with her she says I came to the moment I saw that these were burglars I turned and started to run away and the moment I started to turn away my door came crashing in she got to the door in seven seconds I believe it's just as reasonable I'm entitled to the inference in my favor it's just as reasonable that the officers rammed it the first time that's the that's the slam she heard she gets to the door because it took them seven seconds just to get the back officer to the front she gets to the front door and then she immediately she thinks it's a home invasion runs and it goes and calls the police never hears any clear voice which she should have because she was in a position and you got this officer Daniels who's saying I had eye-to-eye contact her I talked to her in a normal voice she's saying nobody talked to me and as soon as I got to that front door I turned and ran and the moment but just a minute you really you're making your great jury argument but you're really not answering his question which is where I was going it seems to me that I'm trying to put the facts which are in the affidavits to determine whether they're conflicting or they aren't and his question was pretty simple she heard a bang she went to the door to the window whether she had a conversation or not that might be disputed but the fact that she went and they hadn't already banged down the door and she went back to her kitchen thereafter says that there was something before the loud bang that was the breakdown of the door based on her testimony I'm just trying to say you you've only you can argue what you want but you've only got what your client has said and your client says there was something bang that did this and your your honor with all due respect you're making a conclusion you're making an officers were able to ram the door and they said it took multiple times to hit it that somehow they were able to do that during the time before she could get to the door and turn and that was our inferences that need to be drawn in my clients favor not the officers favorite we draw the inference in your client and you're over time so if you draw the inferences in your clients because we're all struggling with the same thing if we draw them inferences in your clients favor is the first thing she heard the battering ram and the the battering ram I believe so but it doesn't matter because either scenario works because the officers have the burden of proven that they properly announced not knocked they did that they got her to the door but did they ever clearly articulate to a person you know something obviously went wrong and the person it should have been if they did it right she was a person that should have heard it and she didn't hear it and and she's reasonable thank you your over time thank you for your argument we'll give him one minute because we took so much let me just tell you we'll give you one minute on rebuttal because we took so much of your time with our questions good morning good morning your honors and may it please the court I'm teal Miller on behalf of the nine agents who've been sued in their individual capacity in this case the key question here is whether given that the officers have come forward with direct evidence that would meet their burden that trial whether what plaintiff has come forward with in opposition to summary judgment is sufficient to create a dispute of fact and it's not and judge Payne your your question about whether the noise she heard the first noise she heard could have been a knock or could have been a battering ram whether there's a dispute of fact about that the answer to that question is clearly no based on her own testimony why is that that's what we're struggling with okay so she says just first of all she acknowledges that all she has as evidence that the first thing she heard was the first hit on the door was an assumption she says I assume that when they come up they threw the instrument at my front door and that's what brought me running that's a page 323 at the record so she acknowledges it's an assumption you can just testify about her own perception so she heard something please go to the so the rev the the uncontradicted evidence shows that no more than seven seconds passed between the first hit to the door and the second hit to the door and that there were only two hits to the door miss Greiner herself at page 336 of the supplemental extras of record says she has the door and there were two marks on it right and so that's that's exactly the point that we're grappling with there were two hits to the door we know the second one bashed the door in right or do I have that wrong okay no that's correct okay so why isn't it just I'm just really keying in on this why is it possible that no reasonable juror could could find in her favor if they believe that the first thing she heard the first hit was the the battering ram I don't know if it's called a battering ram but the first attempt to bash in the door why is that not possible it's not possible because based on her own testimony there simply wasn't time I want to I want to give you the citation to the record about the sort of maximum amount of time that could have passed between the two hits this is at pages of the supplemental extras of record officer Gleason said he immediately broke down the door at pages 277 198 and 118 118 is the ER and the other two citations are the supplemental excerpts is the only testimony about how long it took one one one officer said there was about a second pass between the two hits another and the two other officers said between three and seven most favorable to miss Griner so what does she say please she doesn't estimate she didn't give an estimate of the amount of time between the two noises she heard but she does tell us that during that time she became she her attention was drawn to her door she got up she ran down her hallway which is 35 feet long she got to within five feet of her door she saw what she called a riot a mass of men a ruckus she decided that they were burglars who come to attack but you're not we're getting back up a field so we were narrowing and that was encouraging to me but now we've got two hits and my answer was why couldn't the first one have been the battering and and you said because there wasn't time and so you're getting that from where if not from her testimony well I just asked you that and you said she didn't give it a matter of time but she told us what she did between the two noises she said she heard a minute ago you said seven seconds is the most and where'd you get that from the officer's testimony there are four officers who gave an estimate between one and seven seconds so is it your argument forgive me for interrupting but I'm really trying to focus this is your argument that given what she says she did she couldn't have done those things within seven seconds yes all right yes that's exactly right your honor okay and and that's why I was going over what she did between the two noises that trying to understand the problem comes I'm trying to be careful here to Scott v. Harris which is a United States Supreme Court case says when opposing parties tell two different stories one of which is blatantly contradicted by the record so that no reasonable jury could believe it a court should not adopt that version that's right your honor my worry is that this record is not blatantly contradicted well your honor I in Scott v. Harris there was a videotape I understand it I understand what that was I'm not even looking at the enactment I'm looking at the affidavits because I'm not sure the enactment helps at all but on I'm looking at the affidavits I'm trying to say to myself is her version thereof blatantly contradictory well I think I acknowledge we don't have a videotape but I think we've gotten as close as we possibly could given that we have the before-action report which says there will be a knock-and-announce agent we have somebody who was signed to knock and announce we have nine witnesses who directly witnessed us who said it happened and then we have the next day or well but that just says there's a lot of way evidence on your side but the honest truth is that if I'm looking at this on summary judgment you can have all the witness in the world of the evidence in the world on your side if there's any evidence on the other side I have to give credit to the other side well even if you don't think that we're in Scott v Harris because we don't have a videotape it is still the case based on Liberty Lobby and based on this court's decisions construing it since that when you have direct evidence I'm sorry your honor I interrupted you forgive me go right ahead when you have direct evidence for one side and all you have on the other side is an assumption which is what we have here or in front direct evidence on their side in fact I read it very carefully to your opposition we have the fact that she was in the breakfast area working on her laptop the television was on normal volume she heard a loud bang she did not hear anything else even before or after the loud bang and she heard nobody say that it weren't she had nobody say they wanted her to come to the door she went to the door she would have heard it if it would have happened well your honor she that's if you if that's the question and I don't think heard it if it would have happened the critical fact here is that she did hear something and she says I assume it was the first hit of the ram what's wrong with that what think about think about this in these by our own case law in the Mina case you haven't talked about the Mina case so the Mina case is about a situation in which offices are in side the house in the person's bedroom while she's actually before she comes in and she's asleep and she said she heard nothing and we found an issue of fact here about whether there was a knock and announce and critically in Mina that the court said there's an issue of fact about whether there was a knock or an announce or whether there was a sufficient knock and announce and so the court was taking account of the fact that there was a material dispute about even if you think that there's some evidence that the officers announced whether it's reasonable at 7 a.m. to announce in such a way that you actually can be in someone's bedroom before they wake up when their room is right by the front of the door this is a different situation this is a plaintiff you're adding was a way in that wasn't in the Mina case I don't think I am your honor it specifically says read the Mina case but anyway you think it's not a problem for you in your time sticking so I want to get out of your way but I wanted to give you a notice that I'm concerned about the Mina case well I think I think Martin against City of Oceanside is actually closer on point because that's a case where there's no dispute that the something that was adequate to call the plaintiff's attention to their presence at the door and then the question is her as Judge Smith indicated we're trying to be really conscientious about these burdens and if we if we view the evidence in the fact most favorable to her the first thing they may have done is try to bash the door in not knocking it now and again it's our position it's the officers position that that she doesn't have evidence of a sufficient caliber and quantity that it was the first hit on the door with a battery ram as opposed to her knock because the rest of the record contradicts the possibility I appreciate your argument and I really appreciate the clarification it's very helpful to me judge do you have more questions I was concerned about Mina too that seems to me to be your biggest tumbling block is the Mina decision and you say that the difference is that in Mina the question was really was it loud enough not whether was there was a knock is that right the court said both things it said there's a material dispute a fact as to whether there was a knock and announce or whether it was adequate and and what I'm saying is in those circumstances that got them past summary judgment here we have more evidence and we're much closer to Martins versus City of Oceanside or the Seventh Circuit's decision in Molina where we have a distracted plaintiff who nevertheless heard something and is speculating that what she heard wasn't a knock even though all the direct evidence says that it was not all the direct evidence all the direct evidence your honor there is indirect evidence that it wasn't but there's no direct evidence that it was do you have another question we ask that the judgment be affirmed thank you for your argument we're gonna put one minute on the clock for you counsel because we took up so much of your time thank you your honor I appreciate that may I ask you one quick question yes you are is it correct that the only thing on appeal is your first cause of action which is what you seem to say at page one of your brief I believe so your honor thank you sir your honor I will fail my client if I don't convince you of something in my in my 45 seconds I have we keep focusing on the knock the statute and the Fourth Amendment requires knock and announce the one thing I agree with counsel she said the issue is was there a sufficient knock announce bam bam bam police warrant open the door you have to have both the law requires both somebody's at my front door and the officers duty is to clearly announce who it is and if I don't convince you I would the knock was there she somehow got to the door it's like that other case keen that we cite to they heard something hit their deck they go down and they see a guy with a rifle they didn't doubt that the officers were at the front door and they were drawn there the question was would a reasonable person have heard what the officer said and that's questioning that there was a knock now you're saying there was they met that burden the issue is that was the announce what is was there an announce they have to do both I know you just said they've they met the knock and I'm trying to see if you agree that they did what occurred here was the knock I don't think they properly knock but that's an inference I think they did something to cause her to go to the front door that satisfies it you can ring the stinking doorbell to get them there what they did though is they never clearly announced that's she was present just like the lady sleeping next door if they had done it she would have heard it and I'm entitled to the inference because she just like the lady sleeping behind the closed door next to it I know I got to go that she would have heard it she did not hear it she was in the best position to know whether the officers did a sufficient knock and announce they didn't and I'm entitled to that inference we're asking that you remanded thank you your honor thank you both for your exceptionally helpful arguments we appreciate your help with this important case we'll go on to the next case on the calendar please 16-71752 Samad versus Sessions
judges: N.R. Smith, Christen, Payne